Good morning your honors. Brendan Collins from GKG Law on behalf of OEC Group New York along with my co-counsel Dean Weissgold. With the courts permission I'd like to reserve 5 minutes for rebuttal. Let me ask, where are the pre-petition goods now? Pardon me? The pre-petition goods, where are they now? They were turned over your honor. They are no longer in our possession. The legal question presented here your honor is whether the contracts that extend or modify a common law maritime lien are enforceable. The lower courts decision that such liens are not enforceable should be reversed because it is contrary to what we submitted. Is that the question or is it what goods are they enforceable against? Assuming that you can contractually extend maritime lien it seems to me the question is can you extend it beyond the goods that are hypothecated to use an ancient term in question or can it be extended to cover the security interest in pre-existing or pre-shipped goods. Well your honor I think that does raise an interesting question. I would note your honor that you don't need to contractually extend a lien as to goods that are freight charges associated with the goods actually being shipped because that exists independent of contractual agreement. Here it is interesting your honor. But once those goods are delivered and turned over then there is an issue about whether or not you can by contract continue the lien into the custody of the warehouse. Well your honor here we would submit that we don't even need to reach that issue because there's two components of it. One your honor is we had goods in our possession for worth more than the amount of our claim. We had actual goods at the time of the bankruptcy for worth $1.9 million. And the liens under three separate contracts said you have liens on goods in your possession not only for these shipments but for prior shipments as well for the entire amount you're owed whether under this contract or under any other contract. Sure but you in your briefing did not seem to me to tackle a key point made by the folks on the other side. The world import folks have pushed it aside the idea that this puts third parties at risk and that's something the bankruptcy court was clearly concerned about and the district court was concerned about. And in your brief on page 28 you basically say well that's not this case. Don't worry about it. You say it's important to recognize this hypothetical harm does not exist in this case. The goods in question belong to debtors and no third parties are sure to claim. But that doesn't answer the broader problem right. If we were to rule the way you want us to rule how would we do it in a way that would not put third party interests unduly at risk. Your Honor I would submit that the law is plain that parties who deal with maritime transportation are fully should be aware and are fully aware that maritime liens trump UCC liens. When a bank loans money to an entity that uses maritime transportation. Even you have acknowledged that you are attempting by contract to extend the lien beyond what traditional maritime liens would be right. I mean you just answered Judge McKee's question just now. You acknowledged we would have a lien for the afflatement of these goods by operation of law. But implication we could extend the lien on these goods to reach debt associated with prior shipments right. These are not registered liens like a UCC lien. So the question stands when the bankruptcy court says in effect we are worried about third parties and the district court says we are worried about third parties. Why shouldn't we be worried about third parties? How do you answer that point? Well I think two points Your Honor. One is we are actually asserting a lien on goods we actually have in our possession. We are not asking to go out here to go back out to goods that have gone into the marketplace. We have the actual goods in our possession worth more than the amount we are owed. So the limiting principle, the answer to my question is we have a limiting principle and the limiting principle is our lien couldn't go beyond goods actually in our possession. Is that what I'm hearing you say? I'm saying Your Honor you can rule in our favor without going beyond that here. I think Your Honor the plain language of the Supreme Court's holding and the various cases we have cited are that when an owner decides a sophisticated entity signs three separate contracts saying that the lien survived delivery and secondly that your lien includes the values of cargo in your possession not only for this shipment but for prior transportation provided. When they have agreed to that and they are a sophisticated party I think the precedent is clear. Those are enforceable. Do you really want to argue for the position that if this had gone into World Imports possession and they sold it to third parties that your lien follows the goods and you could go back and get it from the third parties? Your Honor I think as a legal principle we could but we don't need to risk that decision. Boy that would be extraordinary. We have to be concerned with it though. That's the policy issue. I thought underlying the restrictions that courts put on interpreting the scope of a maritime lien. I'm sorry, excuse me, Your Honor. I thought that very issue was the reason for the restrictions that courts put on the breadth and scope and operation of maritime liens. I think Your Honor the Supreme Court in the Bird of Paradise, which I assume Your Honors are familiar with, has said where parties agree to the contract of a freightment extends beyond, you can extend or modify what is a traditional maritime lien. And I would submit, Your Honor. Boy it's such a surprise to me that you're pressing that point that way because I would have thought that the simple answer from your position would be not just, hey you don't have to go there but we're never suggesting that you can have a secret lien that can reach out to third parties with no notice whatsoever and we could take stuff back because there's plenty of language in Supreme Court cases that talk about strictly construing maritime liens precisely because third party interests are implicated. Your Honor, I understand your position. I'm not taking position. No, I understand your concerns. But I also understand that, you know, here we did have the goods in our possession. The court need not reach that far. And secondly, Your Honor, this is an issue where the owner of the goods was the debtors. They are the ones who entered into this party. No one claimed ownership in this good so no one else is being prejudiced. The only parties that are involved here, we submit, Your Honor, respectfully, are the debtors who entered, agreed to a lien in our tariff and our bill of lading. Your Honor, as the Ninth Circuit recognized in the logistics management case, there the court said, or excuse me, in the First Circuit, excuse me, Your Honor, that was a separate opinion. The First Circuit recognized that because it's in the tariff, which this is, it has the force of law. And it's not merely a contractual provision. Although contractual provisions are enforceable, the court there specifically held that such provisions do have the force of law and are the equivalent of a statute. What's your response to the Bankruptcy Court's assertion that allowing an extension of a maritime lien in the way proposed by OEC would severely undermine the UCC regime throughout the United States? I don't, well, Your Honor, again, I don't believe it would because it's well established that maritime liens such as, this is not an unusual provision in a contract, Maersk, the case we cite. Virtually all of the large carriers in the world have these identical provisions saying we're going to have a liens. Because what it does is, Your Honor, it advances maritime commerce. If this is so common, can you help us understand why this is coming up? I mean, I couldn't find any case like this. Your Honor, I would submit that there are at least three or four cases that we've cited that are virtually directly on point. Well, don't, please don't tell me that in re goods of Kate or whatever it is. I'm not, look, I'm not saying that's not good law or interesting or persuasive. When I say, I'm talking about, like, bring us into the 21st century, out of the 19th century. Do you have a case that's like this? Maersk Sealand versus Euro Cargo Express, Your Honor. There is a 2004 Westlaw case 195-0372. We cite it. It involved the plain language of the holding there. It involved a maritime, a bill of lading, which contained the general lien language at issue, which is that a contract to a carriage, it said, its provisions are enforceable under admiralty and maritime case law. And it said the lien there provided for cargo in its possession for freight payable, quote, not only for the shipment in issue, but for payments due under any other contract between the parties. The court held that that was enforceable, Your Honor. It's consistent with Ninth Circuit authority. But you don't have anything in the context of bankruptcy law, right? I'm sorry, Your Honor. Bankruptcy law, where we have this intersection of bankruptcy law and maritime law. That's what was a little surprising to me because it seemed likely that this was not, that this language was not an invention of your client's, that this was probably language that's made it into other maritime contracts. And there seem to be a lot of cases where a shipper goes out of business mid-ocean and it's got freight and is afraid about the liability for the cost. That seems very common. It is. Well, Your Honor, I would submit that, Your Honor, I know my light is on. I'll answer the question unless you prefer me not to. But I would also, Enright Paul Harris Stores, Inc., versus Expeditors at 342 Bankruptcy Reporter 290-294. The court there considered a credit agreement which afforded a lien on cargo in its possession for services provided under this bill of lading or any other bill of lading and held it was enforceable. The Eagle Maritime Transportation versus Cargo of Hardwood Ships, which we cited, they said that the lien could be asserted to enforce payment of freight charges for previous shipments as well as current enroute shipments. Again, Your Honor, I understand Your Honor's concern, and to the extent the court limits it to group cargo in our possession, the result obviously would be much preferable to what we're faced with currently. Thank you. Thank you. Good afternoon, Your Honors. My name is David Braverman. It is my privilege to represent the debtors in possession, the world import entities. May it please the court, may I proceed with my argument? Please. Thank you. I think that OEC is conflating concepts, not an unreasonable prospect under the plethora of case law dating back 200 years. However, there's one thing out of all these cases, starting with the Bird of Paradise, that is entirely clear. Maritime lien is a secret lien. Maritime lien is not known to the world, and it is limited by definition to the cargo in possession. It is a possessory lien. Yes, Your Honor. Well, and they say to us, and we had possession of the cargo. We had possession of the cargo. That's at issue here. And the fact that liens associated with prior shipments shouldn't mean that we can't contract for those earlier liens to attach to this cargo. And, in fact, you wouldn't dispute, would you, that it's all over your client's agreements with them that those liens do attach, right? I mean, that's in the credit agreement. It's in the tariff, which includes the bill of lading. It's in every invoice, right? I do not dispute that that language exists. However, that conflates the issue because those issues, that language relates to general liens. They do not relate to maritime liens. They can't. And the reason they can't is because maritime liens are created by operation of law. And they relate to the cargo in possession for debts relating to that cargo. You don't need to say anything to have that maritime lien with respect to that cargo in possession. I'm sorry, Judge, but that's good. You don't need anything written to create that lien for the cargos in possession for the freight charged for the shipment. Absolutely nothing. You are 100 percent correct. It's created by operation of law. What you're talking about. You have to go right to the bird of paradise stuff, okay? Sure. They say in their briefing, look, we're quoting to you from what the Supreme Court says. Parties may frame their contract of a freightment as they please. They may agree that the goods, when the ship arrives at port, shall be deposited in a warehouse. The transfer and deposit shall not be regarded as waiver of lien. Where they so agree, so ruled is that the law will uphold the agreement and support the lien. In other words, they say, here's an example, bird of paradise is telling you things can happen outside that traditional thing because the parties agreed to it, and that will be enforceable as a maritime lien. What's wrong with their assertion about that, given the language here? The bird of paradise case is much more limited. The bird of paradise case says that it is a strict digeris lien that's created by operation of law. It may be extended, and the only circumstance. Well, it may be modified by limiting it, and it may be extended in one circumstance, and that circumstance is where there is constructive possession. Where do you get that piece of it? Where do you get that and the one circumstance language? I get that one circumstance language from the case itself, because in that case, in bird of paradise, they specifically said that the parties can extend it in the circumstance where they can do a conditional delivery. It makes all the sense in the world. You're going to have to help me, because I read this case more than once, and I didn't see any place where it says that. I will get to that language in a minute. However, I do want to say that in the 200 years that have expired since that case was decided, there's not a single maritime lien case that deals with anything other than the extension based upon a conditional delivery. The reason is because it's a possessory lien, and it's a possessory lien for the cargo in possession. It doesn't mean that if you have possession of a cargo today, you can use that cargo to offset charges on cargo that has previously been released. Even if the party has said you can do that, world imports has said by agreeing to the bill of lading, by accepting the tariff, by accepting the invoices, by writing the credit application, even though it's said in all those places or accepted where it's said that the lien will extend to cover prior and preexisting debts, it can't, because what you say means nothing in those documents. No, sir. It means nothing in the context of a maritime lien. That is language relating to a general lien. That is language that is not a secret lien that's supposed to give the world notice. They never perfected that lien. They never did anything to perfect that lien. In fact, PNC Bank was sitting on stateside with a perfected UCC Article 9 lien in all the goods that are at issue in this case. The language that Your Honor asked me about is found at page 555, which says that the parties may agree that the goods, when the ship arrives at the port of destination, shall be deposited in the warehouse of the consignee or owner and that the transfer shall not be regarded as the waiver of the lien. And where they so agree, the settled rule in this court is that the law will uphold the agreement and support the lien. That's an issue of conditional delivery. That's an issue where they say, when you put it in a warehouse, for example, a bonded warehouse, stateside, and they look at that cargo, what they have done is conditionally release possession, so that the condition is we're really not releasing possession. And again, Your Honor, Judge Jordan, that is for, again, the economies of the process. Read the next paragraph. Presumption is in favor of the lien, as already explained, and you just read that to us, but it may be modified or it may be excluded or displaced by direct words or by the insertion of some stipulation wholly incompatible or incompatible with the existence of such rights. That's probably the only English in the entire opinion that is comprehensible. I'm glad you said that. The answer is, is that the circumstance of that case dealt only with delivery to a warehouse. And I just want to get this out, and then I'll go back and answer your questions. The reason why it's very important to have that warehouse language is because if a ship arrives in port and has a cargo and there is a 15 or a 30-day period of inspection or a 15 or 30-day period for payment, it would make no sense and it would really grind commerce to a halt if we required that ship to remain in dock in possession of the goods. Rather, Bird of Paradise has come up with the notion of let's do a conditional possession or conditional delivery concept whereby you put in the warehouse, the ship can go sail its way, and the goods are still protected. That's precisely the point that your opponent is making, that you're arguing for something that will defeat the free flow of commerce, because if it weren't for allowing the maritime lien to attach in accordance with their agreements, repeated agreements, then we'd have stopped shipping for them. We would not have gone ahead and done these things. And by allowing sophisticated parties to agree that the maritime lien is going to attach to a later shipment of goods, you aid and assist and encourage the extension of credit which favors the free flow of goods. To the contrary, to the contrary, because those goods then could leave possession and the goods that have already left possession, in other words, the goods that were not paid for but were delivered, they're now in the stream of commerce. But leave that aside, right, because you can assume for the sake of discussion that the extraordinary position that, yeah, they could go out and haul them back in does not get any traction at all. But if they've got the goods in their hands to secure an earlier lien, what is wrong with seeing that as an aid to commerce, something that facilitates instead of impedes commerce? Well, it's not an aid to commerce if you allow goods that have already been released now to be held. If you have goods in possession, if you have goods in your possession and you allow those to be held hostage for goods that have already been released, you're not aiding commerce at all, you're hindering commerce. Why? Well, that's an assertion. It allows persons with goods to sell to be shipped. I have some confidence that they can do that and still have a way of realizing any obligation. Why would I ship your next shipment of goods if I didn't have the assurance that the $2 million you already owe me, I'm going to get it because I've got $2 million worth of your goods right here. Because the entities that finance the current shipment have expectations that when the freight charges are paid for their shipments, that their shipments will be free and they can enter the stream of commerce and they can deliver them to their customers. It's the same parties. It's different parties, Your Honor. World Imports are different parties every single time and we don't use OEC as our only shipper. And it's completely different. Furthermore, these are secret liens. Nobody knows about them. Okay, isn't that the problem here? Isn't that the problem that these are secret liens that exist and you have other creditors that have expectations that are defeated? Precisely. Isn't that a problem with the free flow of commerce? Precisely. You said it much better than I could have articulated it. I was trying to. But the fact of the matter is that you have letters of credit issued for particular shipments and they have the expectation that when their shipping charges are paid, they get their goods. Don't they have that very same problem with every maritime lien? In other words, since they are secret, and let's set aside the fact that there's a published tariff here, right? Because there is a published tariff that says the very same things that we've been talking about. Irrelevant. Yeah. So they're not really double blind, super secret. There's a published tariff. But set that aside for a moment. No, that tariff, Your Honor, I'm sorry, that is a double blind. That tariff is unrelated to the maritime lien. See, the problem here is that the language you're talking about is contractual. That is the consensual agreement to a lien. That's completely different than a maritime lien. Well, that's what she keeps saying. But the bird of paradise seems to say, and so does the Ninth Circuit case's logistic management, and so does reaching back to Goode's Acade and the Louisiana case about the wood chips. They all seem to be saying sophisticated parties can contract, and the maritime lien, not some general lien out there to be secured by the UCC, the maritime lien can be extended in that fashion. No, no, well, I respectfully disagree. Then are you respectfully disagreeing with the Ninth Circuit? No. But that's the logistics management case. I'm respectfully disagreeing with the notion that a maritime lien can be extended for anything beyond conditional delivery. In the 200 years since the bird of paradise, there's not a single case that says that you can extend a maritime lien to a shipment that possession has already been relinquished of. So if you're talking about that has already been relinquished, I'm not sure I'm following you. But before we go down that path, explain to me, if you would, what it is about these two parties and the agreement they've got. And maybe, I'm sorry, you may have said earlier that the World Imports is not a party, but I was under the impression, including from your briefing, that World Imports was collectively acting as a unit. Oh, yes. Okay. I'm sorry. Okay.  They come to a contractual agreement, and that agreement provides for the maritime lien to be extended. How is it functionally different for third parties, that is, other creditors who might have an interest in what World Imports is doing? If the lien is secret and the tariff, really, nobody knows about it, how is it any different for them to be confronted with a lien on that shipment, which was secret, and confronted with a lien on that shipment, which is pulling in credit arrangements from previous shipments? They're out of luck either way, right? I'm not sure I follow the hypothetical, but I can tell you this, that the only cases that extend the maritime lien, Your Honor, are those that relate to possession. Let me try it again, because it's important to me to get an answer to this question. Your question and the question put to you by Judge Van Aske, it seems to me, posit that the reason these things are strictly construed is because they're secret liens, and it implicates third party interests. Because they're created as a matter of law, and they're secret liens. Okay. That problem for third parties is going to be the same whether the $2 million in debt arises on this shipment, or the $2 million of debt arises from a previous shipment, right? It's still going to be secret, it's still going to be a problem, and yet the law says the free flow of goods is important enough to us that, secret or not, we enforce it. Is that right? No. And the reason I say no is because what people know is that the lien, the secret maritime lien, at its worst, is limited to the shipping charges for the goods that are in possession of the shipper or the carrier in question. But that could be the full value of it, right? It could be a full $2 million. Why would they ship it, Your Honor? They wouldn't ship something that has a full value of $2 million that costs $2 million to ship. In this case, and it's a perfect example, you have $120,000 worth of shipping charges on a $2 million shipment. And everybody in the world knows that the worst-case scenario is that the shipper has a maritime lien on these goods to the tune of the shipping charges, in this case, $120,000. I'm sorry, Your Honor. Louis Norton. Is that clear any of this up in terms of the difference between the maritime lien and a contractual lien and what happens when one attempts to, those with an assignment, extend the protections of a maritime lien to another party by virtue of an assignment, the fact that that assignment is of a different quality than that which the party thought they were signing? Does that at all get to the bottom of any of this? Well, I think it just goes back to the same issue, Your Honor, and that is that you have three types of circumstances. You have a bird-of-paradise circumstance where you have a maritime lien possessory can be extended in one respect and only one respect, and that is with respect to conditional delivery. You have the freight-of-the-cake cases where you're talking about a completely different scenario where you have bank financing and you're talking about that's the hypothecation where it's effectively accounts receivable financing. It's a new credit scenario. Yes. And then the third situation is the general lien situation, which is really not applicable in this case. And the reason it's not applicable in this case is because they have never, OEC, has never asserted a general lien. They have always asserted a maritime lien. And all of their reference to the language in the tariff and the bills of lading, all of that language, all relates to the general lien, not the maritime lien. When we went to trial on this matter before the bankruptcy court, we put on testimony. At the end of the day, it was agreed by all parties that the issue was whether or not they had a maritime lien on the present goods in their possession to secure indebtedness for pre-petition goods. Never was the issue do they have a valid general lien. And I suggest to Your Honor and Judge Jordan, I suggest to you that the only way to extend the maritime lien, it's not an extension of the lien at all, but it relates to the issue of possession. And you can deliver possession, but do so conditionally to further the means of commerce without affecting the validity of the lien. I see my time is up, unless Your Honors have any further questions. Thank you. Thank you. Thank you, Your Honor. Your Honor, in regards to just a couple of points that were raised, Bird of Paradise, the language, he says, this is a very limited situation they addressed. Just want to quote the language. Parties, however, may frame their contract of refraintment as they please. And, of course, may employ words to affirm the existence of the maritime lien or to extend or modify it. Or they may so frame their contract as to exclude it altogether. The plain import of that, Your Honor, is that that's not a limited provision. It says the parties can agree to extend or modify a lien, and when they do so, we will enforce it. Why don't you address, if you would, again, the problem with third-party rights. Your learned adversary there has said, if I understood him correctly, you'll never have a circumstance ever where a shipper has a lien on goods that is equal to the value of the goods. Because that's just not the way the system operates. And, therefore, the people who extend credit, others who extend credit, believe they're going to have some security there. And if we accept the rule that OECD is advancing, it wipes that out. Now, I put words in his mouth, but I take that to be his argument. What's your response to that? Your Honor, unfortunately, that's not the case, because in maritime transportation, situations often arise where there can be shipments, there's problems on the high seas, there's demerge issues. It's not uncommon. The lien includes not only the direct freight charges, but the demerge. Ships arrive at the port. It sits there. It's not picked up by the consignee. Oftentimes, the demerge itself can well exceed the value of the cargo. That's not at all uncommon, Your Honor. If you go, cases often in the Southern District, demerge cases are probably half of the freight cases that appear in regards to NVOCCs and freight forwarders. So it's not at all the case. The direct freight normally would not cost more than the cargo, but oftentimes it ends up being in excess of the amount of the cargo, and the cargo may just be disposed of because the demerge is greater than the value of the cargo. Your Honor, if I could, I'd like to, I think it's an important point. They seem to suggest, well, because you use the word general here, it's not a maritime lien. Your Honor, that is simply contrary to the overwhelming weight of authority. The Supreme Court in Norfolk Southern v. Kirby said, made clear the determination of whether a contract is maritime turns on whether it has reference to maritime service or maritime transactions. Thus, where the primary objective of a contract is to accomplish the transportation of goods by sea, the contract is maritime. How do you explain NUEL in the language that I mentioned? Your Honor, NUEL is frankly, I think we've cited it, but NUEL isn't a real case. They made a mistake. Did they raise it all that time? They cited to the argument the summary of the syllabus. If one raises, the decision does not hold what they said it holds. I'm looking at the decision now. Your Honor, I think if you turn to the appendix. It's only a six-page opinion. I know, but only the last page is the actual opinion. The opinion itself is only three paragraphs. The other thing is the summary of their argument. So they're citing a case that doesn't exist, Your Honor, and mistakes are made. I'm a little surprised they continue to cite it, knowing that it's not a real case. It's clear that that is the syllabus. They're summarizing the argument of the appellant, but it was not part of the court's decision. So it's not a conflict between NUEL versus the Bird of Paradise. The Bird of Paradise is the only real Supreme Court case. What's your response to the assertion by Mr. Braverman that the bill of lading, the tariff, these things aren't really public documents? I understood him. Well, Your Honor, I think he made two points, if I could. One, he says they're not real public. First, I think he seems to be suggesting they're not maritime, which I think the Third Circuit a hundred years ago said from time immemorial a bill of lading is the definition of a maritime contract. It's not so that issue that somehow this isn't a real maritime lien or a maritime contract. It's just well contrary to express law. Second, tariffs are accessible. One can go to the FMC and access a party's tariffs. They have to be there. Parties have to be able to review them. In fact, shippers are presumed to know the contents of a tariff. Here the bill of lading provisions we relied upon were contained in the tariff that have the force of law. So it's not as if this is not a secret that no one could know about. They need to just simply go to the tariff, read the relevant tariff provisions, and it provides the extent of the hypothecation or collateral in regards to the lien. Thank you. Thank you, Your Honor. I'd like to get a transcript of the argument. Could you see Ms. Motto at the conclusion? She explained the details of that. Can you just abide by that? I'm sorry. I missed that. I'd like to get a transcript of the argument. Okay. So if you could just see Ms. Motto and she can direct you on that. All right. Thank you very much. Appreciate it.